## CITY OF VIRGINIA v. GUST ERICKSON.[1]

September 20, 1918.

No. 21,113.

**Intoxicating liquor — sale in violation of local option vote — violation of city ordinance.**

1. Virginia in St. Louis county is a city governed by a home rule charter adopted prior to the local option act of 1915.  In 1917 an election under the local option statute resulted in favor of prohibition which became effective on March 15, 1918.  By an ordinance approved May 13, 1918, the common council prohibited the sale of intoxicating liquor in the city.  The relator was convicted of a violation of this ordinance. On habeas corpus he attacks the validity of the ordinance upon the ground that the council was without charter authority to enact a prohibitory ordinance; and upon the ground that a sale, being a crime under the local option statute, could not under the charter be made an offense against the city.

**Same — authority of city council to enact ordinance.**

2. The charter granted the council express power to license and regulate the sale of intoxicating liquor.  The effect of the adoption of prohibition was to suspend the power to license and regulate.  It may be conceded that prior to the adoption of prohibition the council was without authority to pass a prohibitory ordinance, but only to license and regulate, since the grant of the power to license and regulate was a limitation.  But after such adoption, in the exercise of the police power definitely granted though in general terms by the welfare clause of the charter giving it specific authority to legislate for the

[1] Reported in 168 N. W. 821.

safety of the community, the preservation of peace and good order, and the suppression of vice, it had such authority.

**Same — sale an offense against state and against municipality.**

3. The fact that the sale of intoxicating liquor in the city was made an offense against the state by the local option statute did not prevent the council in the exercise of the police power from making such a sale an offense against the municipality by an ordinance not inconsistent with the state law. ·

Gust Erickson was convicted in the municipal court of the city of Virginia of violating Ordinance No. 180 of that city, prohibiting the sale of intoxicating liquors, and committed to the custody of the chief of police. Upon the relation of Erickson the district court for St. Louis county granted its writ of habeas corpus directed to the chief. At the hearing the prisoner was remanded, Freeman, J. From the order remanding him, relator appealed. Affirmed.

*S. S. Dahl,* for relator.

DIBELL, C.

The relator was convicted in the municipal court of the city of Virginia, St. Louis county, of the violation of an ordinance prohibiting the sale of intoxicating liquors within the city limits and in default of the payment of a fine imposed he was committed to the custody of the respondent, the chief of police. Claiming that the ordinance was invalid he procured a writ of habeas corpus from the district court. Upon the hearing the ordinance was sustained, the relator was remanded, and he appeals.

1. Virginia is governed by a home rule charter adopted prior to the local option law of 1915. Laws 1915, p. 24, c. 23. In September, 1917, an election under the local option law was had in St. Louis county. It resulted in favor of prohibition which became effective on March 15, 1918. By an ordinance approved May 13, 1918, the common council prohibited the sale of intoxicating liquors within the city limits. The question is upon the validity of this ordinance. It is attacked by the relator upon the ground that the council was without charter authority to enact a prohibitory ordinance; and upon the ground, which is in

a way a part of the ground first stated, that a sale made unlawful by statute could not under the charter be made an offense against the city by ordinance and the seller subjected to two punishments for the one act. These are the only points.

2. The legislative powers conferred upon the common council by the city charter, so far as important to the questions before us, are these:

"Section 99. SPECIFIC POWERS. The city council, except as in this charter otherwise provided, shall have the general management and control of the finances and all property of the city, and shall have full power and authority to make, amend or repeal all such ordinances and resolutions as it shall deem expedient for the government and good order of the city, for the protection of the public and public health, comfort and safety, for the suppression of vice and intemperance and the prevention of crime. It shall have power and authority to declare and impose penalties and punishments for violation of ordinances and resolutions, and to enforce the same against any person who may violate the same; and all such ordinances and resolutions, not inconsistent with the constitution and laws of this state, nor of the United States, are hereby declared to have full force of law. For these purposes the city council shall have specific authority by ordinance:

"First." * * *

"Thirty-second. To license and regulate the sale of intoxicating liquors," etc. * * *

"Seventieth. To regulate and require licenses to be obtained for the pursuit and prosecution of such occupation or kind of business not hereinbefore expressly referred to and provided for, as in the opinion of the city council may require regulation, and, in general, to adopt all such measures and to establish all such regulations, in cases where no express provision is hereinbefore made, as the city council shall from time to time deem necessary for the promotion of the health, comfort and safety of the inhabitants, the preservation of peace and good order, the suppression of vice and the enhancement of public welfare in said city. * * *

"Section 100. OTHER POWERS. The city council shall prescribe by ordinance all regulations proper and necessary to carry into effect any

and all powers granted by this charter, and may provide by such ordinances for the punishment of the violation of any of the same," etc.

The effect of the county becoming dry on March 15, 1918, was to suspend, while prohibition continued in force, the operation and enforcement of the city charter so far as it related to the sale of intoxicating liquors by licenses or the conduct or regulation of licensed drinking places. This is the express declaration of the statute. Laws 1915, p. 28, c. 23, § 11; State v. City of International Falls, 132 Minn. 298, 156 N. W. 534. Section 16 states the limits of the suspension. The effect was to suspend the power of the common council to license the sale of intoxicating liquors, or to regulate their sale, under the grant of power given by subdivision 32. No sales could be licensed or regulated. All were in violation of the local option statute and punishable by the state.

It is the rule of construction of this court that a general welfare clause introducing and stating the purposes of specific grants of authority to legislate, such as is the welfare clause of section 99 which precedes the enumeration of express grants, is limited by the specific enumeration of the subjects of authorized legislation. City of St. Paul v. Traeger, 25 Minn. 248, 252, 33 Am. Rep. 462; City of St. Paul v. Stoltz, 33 Minn. 233, 22 N. W. 233; State v. Hammond, 40 Minn. 43, 41 N. W. 243; Green v. Eastern Ry. Co. 52 Minn. 79, 53 N. W. 808; City of Red Wing v. Chicago, M. & St. P. Ry. Co. 72 Minn. 240, 75 N. W. 223, 71 Am. St. 482; Village of Fairmont v. Meyer, 83 Minn. 456, 86 N. W. 457. It may be conceded, and in fact it is conceded by respondent, that prior to the going into effect of prohibition in the county the council could not enact a prohibitory ordinance, because subdivision 32 limited its power to licensing and regulating, and this is the concession notwithstanding the grant in the nature of a welfare clause of subdivision 70. See State v. Hammond, 40 Minn. 43, 41 N. W. 243; Village of Fairmont v. Meyer, 83 Minn. 456, 86 N. W. 457; State v. City of Duluth, 134 Minn. 355, 159 N. W. 792, Ann. Cas. 1918A, 683. And, indeed, so far as concerns a decision in this case, it might be conceded, in view of the general policy and course of the legislation of the state, that neither welfare clause, nor both together, though sub-

division 32 were omitted, would prior to the city becoming dry authorize a prohibitory ordinance. That question is not for decision for such a situation is not before us.

When the ordinance was enacted the county was dry and lawful sales could not be made in Virginia. That unlawful sales would be opposed to the safety and peace and good order of the community and the suppression of vice is not a question open to debate. Subdivision 70 is an express grant of power, in cases where express provision is not theretofore made, to establish regulations "for the promotion of the health, comfort and safety of the inhabitants, the preservation of peace and good order, the suppression of vice and the enhancement of public welfare in said city." Charter authority for the ordinance before us may be rested upon this provision. It is not a statement of the purpose of the express grants. It is in itself an express grant though general in terms. It is not a welfare clause limited to the statement of the purposes of authorized legislation such as that which introduces the express grants. We do not consider the words, "in cases where no express provision is hereinbefore made," a limitation after prohibition became effective. The grant was of authority to make a local police regulation. It was exercisable when necessity or propriety reasonably required. When prohibition became effective in the county, and by consequence in the city, new local dangers and evils arose. The granted police power gave the council authority to deal with them. It is not important that when the charter was adopted the council could not have enacted such an ordinance, either because of the limitation of subdivision 32, or because statutory prohibition was not in force in the county. The power granted by subdivision 70 was a police power exercisable when need for its exercise came. It spoke for the future, though conditions changed, as well as for the present. It is not important that the occasion for its exercise came because of the adoption of prohibition and the suspension of other charter provisions. That its terms are broad enough to sustain the ordinance is fairly clear from Village of Fairmont v. Meyer, 83 Minn. 456, 86 N. W. 457. There the authority to legislate rested upon a welfare clause specifically granted. The case of Fortner v. Duncan, 91 Ky. 171, 15 S. W. 55, 11 L.R.A. 188, involving a village ordinance authorized only by a welfare clause,

prohibiting sales within the village, where the county was dry, is of value. The ordinance was sustained. It could not have been sustained had the county not been dry. We hold that there is charter authority for the ordinance.

3. It is objected that it was not within the power of the council under its charter to make an act which was criminal under the state law an offense by ordinance. As already suggested this is in a way a part of the question just considered, that is, the question of charter power. It is the settled law of this state, and of nearly all jurisdictions, that a municipality, if it has proper delegated authority, and if it legislates consistently with the state law, may make an act an offense against the municipality although it is by statute an offense against the state. State v. Ludwig, 21 Minn. 202; State v. Lee, 29 Minn. 445, 13 N. W. 913; State v. Harris, 50 Minn. 128, 52 N. W. 387, 531; State v. Lindquist, 77 Minn. 540, 80 N. W. 701; City of Jordan v. Nicolin, 84 Minn. 367, 87 N. W. 915; State v. Marciniak, 97 Minn. 355, 105 N. W. 965; 2 Dunnell, Minn. Dig. §§ 4914, 6759; 2 Dillon, Mun. Corp. §§ 630-633; 2 McQuillan, Mun. Corp. §§ 875-888; McQuillan, Mun. Ord. §§ 497-510; Cooley, Const. Lim. (7th ed.) 278-279; note 17 L. R.A.(N.S.) 49; note 31 L.R.A.(N.S.) 693, 699-709. Such an ordinance does not punish the violation of the state law but establishes a local law the infraction of which it punishes. The authority for the ordinance may rest upon a specific welfare clause, though more often the grant is in express terms, and when it rests upon a welfare clause the existence of the power may be less clear. See 2 Dillon, Mun. Corp. § 632; 2 McQuillan, Mun. Corp. § 877; note 17 L.R.A. (N.S.) 65. The case of Fortner v. Duncan, 91 Ky. 171, 15 S. W. 55, 11 L. R.A. 188, is much in point. The authority for the ordinance was in a welfare clause and the sale was in a county where prohibition prevailed and where but for prohibition the municipality would have been without authority to prohibit. In City of Decatur v. Schlick, 269 Ill. 181, 109 N. E. 737, an ordinance prohibiting sales within the city enacted under sufficient charter authority after prohibition became effective within the territory to which it applied was sustained. It is unnecessary to speculate upon the limits of the power which may be given to a city to

,

make an act criminal under a statute an offense against the municipality. A mere police power to be exercised for local purposes, such as we have before us, is well within the limits.

The trial court was right in its conclusions upon both points discussed. The ordinance is valid. The order is affirmed and the relator is remanded to the custody of the respondent.

Order affirmed.