## CITY OF ST. PAUL v. FIELDING AND SHEPLEY, INCORPORATED.[1]

May 25, 1923.

No. 23,377.

**Eight hour ordinance not unconstitutional.**
1. An ordinance of the city of St. Paul providing that eight hours shall constitute a day's work on any work done for the city of St. Paul, is not in contravention with the Constitution of the United States or of the state of Minnesota.

**Authorized by public welfare clause of city charter.**
2. The enactment of such an ordinance is within the authority given by a provision of the charter that the city council shall have full power to enact ordinances for the good government of the city and to promote the general welfare, education, comfort and well-being of the city and its inhabitants.

[1]Reported in 194 N. W. 18.

Defendant was charged in the municipal court of St. Paul with having violated Ordinance No. 5120 of that city, found guilty and sentenced to pay a fine of $50. From the judgment, Boerner, J., entered pursuant to the order, defendant appealed. Affirmed.

*Denegre, McDermott, Stearns & Weeks,* for appellant.

*Carlton F. McNally,* City Attorney, and *Lewis L. Anderson,* for respondent.

HALLAM, J.

1. Defendant corporation entered into a contract with the city of St. Paul to pave certain streets in said city. The contract made special reference to an ordinance of the city of St. Paul known as ordinance No. 5120, and which provides that "eight hours in any twenty-four hours shall constitute a day's work on any work done for the city of St. Paul." Exceptions follow, which are not important here. Defendant violated this ordinance and employed men to work 10 hours a day. It is stipulated that the regular rate of wages for the men employed is 40 cents per hour and that the men worked 10 hours a day in order to earn $4 a day. Defendant was convicted and appeals to this court.

Two principal questions are raised.

It is contended in defendant's brief that the ordinance violates sections 7 and 12, article 1, of the state Constitution, which among other things guarantee that no person shall be held to answer for a criminal offense or be deprived of life, liberty or property without due process of law. Ordinances and statutes of similar import have been construed by a number of courts. The decisions have not been altogether in harmony. If the question were an open one it would lend itself to interesting discussion in considering whether the ordinances violated the constitutional provisions noted or perhaps some others. The Constitution of the United States is, however, broader than that of this state, and the question of the validity of such legislation has been so decisively settled by the Supreme Court of the United States in Atkin v. Kansas, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. ed. 148, that we feel it only necessary to quote from the opinion of Justice Harlan in that case. He says [at page 222]:

"If, then, the work upon which the defendant employed Reese was of a public character, it necessarily follows that the statute in question, in its application to those undertaking work for or on behalf of a municipal corporation of the State, does not infringe the personal liberty of any one. It may be that the State, in enacting the statute, intended to give its sanction to the view held by many, that, all things considered, the general welfare of employes, mechanics and workmen, upon whom rest a portion of the burdens of government, will be subserved if labor performed for eight continuous hours was taken to be a full day's work; that the restriction of a day's work to that number of hours would promote morality, improve the physical and intellectual condition of laborers and workmen and enable them the better to discharge the duties appertaining to citizenship. * * * [and at page 223]:

"We are reminded by counsel that it is the solemn duty of the courts in cases before them to guard the constitutional rights of the citizen against merely arbitrary power. That is unquestionably true. But it is equally true—indeed, the public interests imperatively demand—that legislative enactments should be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution. It cannot be affirmed of the statute of Kansas that it is plainly inconsistent with that instrument; indeed its constitutionality is beyond all question.

"Equally without any foundation upon which to rest is the proposition that the Kansas statute denied to the defendant or to his employe the equal protection of the laws. The rule of conduct prescribed by it applies alike to all who contract to do work on behalf either of the State or of its municipal subdivisions, and alike to all employed to perform labor on such work.

"Some stress is laid on the fact, stipulated by the parties for the purposes of this case, that the work performed by defendant's employe is not dangerous to life, limb or health, and that daily labor on it for ten hours would not be injurious to him in any way. In the view we take of this case, such considerations are not controlling.

We rest our decision upon the broad ground that the work being of a public character, absolutely under the control of the state and its municipal agents acting by its authority, it is for the state to prescribe the conditions under which it will permit work of that kind to be done. Its action touching such a matter is final so long as it does not, by its regulations, infringe the personal rights of others; and that has not been done."

Nothing further need be said on this subject. We sustain the constitutionality of the ordinance.

2. The other question raised is that the ordinance is not authorized by the charter of the city of St. Paul.

There is no charter provision expressly authorizing the council to pass an ordinance of this kind. There is, however, a provision in section 126, giving the council "full power and authority to * * * enact * * * ordinances * * * for the good government of the city * * * the preservation of peace and good order * * * the preservation of health * * * to promote the general welfare, education, comfort, and well-being of the city and its inhabitants." This court has been rather liberal in its construction of such general grants of authority to city legislative bodies. It has been held that where such general authority is given it is not limited by specific grants of legislative power. State v. Sugarman, 126 Minn. 477, 148 N. W. 466, 52 L. R. A. (N. S.) 999; Meyers v. City of Minneapolis, 154 Minn. 238, 191 N. W. 609. We are of the opinion, in view of the pointed language of Justice Harlan in the Atkin case, placing the validity of this legislation upon the legislative body's estimate of public welfare, that the ordinance may be sustained under the general welfare clause of the city charter above quoted.

Judgment affirmed.

HOLT, J. (dissenting.)

I doubt the proposition that the charter grants the council power to make the violation of the terms of a city contract by the contractor a misdemeanor. If this be an exercise of the police power lodged in the city council, it seems to me the private contractor who works

men more than eight hours should come equally under the ban of the ordinance, or else it is open to the charge of being discriminatory.