# CARL H. SCHULTZ v. CITY OF DULUTH.[1]

## April 24, 1925.

## No. 24,417.

**Title of ordinance which regulated motor busses on certain streets by prohibiting them.**

1. The title of an ordinance, purporting to be regulatory of intra-city motor busses upon streets where street cars operate on double tracks, is not at variance with the provisions therein which at certain times and places prohibit the operation of such busses upon such streets.

**Ordinance not void.**

2. The ordinance is not void as discriminatory or as class legislation, since no one has the right as a matter of course to conduct a private business upon the public streets.

**Ordinance within powers of city of Duluth.**

3. The city of Duluth is given the care and control of its streets to serve public convenience and safety, and the ordinance enacted for such purpose is not in excess of the power possessed by the city.

**Ordinance not unreasonable or prohibitory.**

4. The ordinance cannot be held unreasonable or arbitrary, as a matter of law, which leaves all the streets of the city open to the business of the motor busses mentioned except the streets whereon street cars operate on double tracks and that only to a limited extent.

**Contract rights of plaintiff.**

5. No contract rights of plaintiff will be violated by the enforcement of the ordinance.

1. See Municipal Corporations, 28 Cyc. p. 379.
2. See Municipal Corporations, 28 Cyc. p. 907.
3. See Municipal Corporations, 28 Cyc. p. 907.
4. See Municipal Corporations, 28 Cyc. p. 907.
5. See Constitutional Law, 12 C. J. p. 1012, § 633.

[1]Reported in 203 N. W. 449.

Action in the district court for St. Louis county to restrain defendant city and its officers from enforcing the provisions of an ordinance. Plaintiff appealed from an order, Grannis, J., discharging an order to show cause and denying him a temporary injunction. Affirmed.

*Galen E. Bush,* for appellant.

*Washburn, Bailey & Mitchell,* for intervener.

*John Jenswold,* special attorney for respondents.

HOLT, J.

The action is to enjoin the city of Duluth from enforcing an ordinance. The Duluth Street Railway Company was permitted to intervene. When the action was begun a temporary restraining order was granted and an order made requiring the city to show cause why a temporary injunction should not issue. After a hearing the restraining order was vacated and a temporary injunction denied. Plaintiff appeals.

The title of the ordinance is: "An ordinance regulating the operation of motor vehicles carrying passengers for hire (except taxicabs, vehicles engaged in livery business and busses operating between Duluth and other municipalities) upon streets where a double track of street railway line is constructed and operated." The ordinance was enacted by a direct vote of the people at a special initiative election, as authorized by the charter of the city. It is attacked on various grounds.

1. Appellant contends that the title indicates a regulatory and not the prohibitory ordinance which it is. Hence there is a fatal variance, for the charter of Duluth provides: "The subject of every ordinance shall be set out clearly in the title thereof."

Chapter 3, § 9, of the Charter. The exercise of nearly every power of regulation includes the prohibition of certain acts at certain times and places. Therefore, when the title indicates the purpose of the ordinance to be the regulation of certain motor vehicles on streets where double track street car lines are operated, we may well expect to find in the body thereof provisions prohibiting such motor vehicles at times and places the use of those streets. And

that is all that is found in this ordinance. There are times when all of the streets mentioned are free to any use the owners of those motor vehicles may desire. A part of one street is always open to a limited use. Within such cases as Winters v. City of Duluth, 82 Minn. 127, 84 N. W. 788, and City of Duluth v. Abrahamson, 96 Minn. 39, 104 N. W. 682, both involving the sufficiency of the title of ordinances of the respondent city, we think there is no question but that the title is a fair index to the contents of the ordinance.

2. The ordinance is said to be discriminatory as to appellant and void as class legislation. It must be borne in mind that these motor vehicles for hire which operate only within the city stop to take on and to let off all their passengers upon the streets over which they run. Such vehicles carrying intercity passengers usually stop at some terminal point for such purpose, and do not carry local passengers. That the frequent stop of motor vehicles carrying passengers for hire upon streets where street cars are operated upon fixed tracks interferes with traffic, and endangers the safety of travelers upon the streets, must be obvious. There are reasons for placing intracity busses in a class by themselves. Appellant concedes they might well be excluded from the class of taxis and we think they need not be classified with intercity busses. The reasons for the classification as to license fees sustained in Jefferson H. T. Co. v. City of St. Cloud, 155 Minn. 463, 193 N. W. 960, may also apply where certain motor vehicles are excluded from using certain streets at all times in carrying on a transportation business.

3. It is claimed the municipality lacks power to enact the ordinance. The statute, G. S. 1923, § 1271, gives a city of the first class as wide powers in framing a home rule charter as the legislature might give it, did not Article 4, § 33 of the Constitution prohibit special legislation. By the Duluth home rule charter all powers conferred previously were retained. (Chapter 1 of Charter.) Among the powers thus retained was the one to enact ordinances "for the enhancement of the general welfare, for the government and good order of the city, for the protection of public health, comfort and safety" and specifically to license and regulate "persons engaged in carrying passengers" prescribe standing places * * * within

the streets "where the same may remain while waiting for business, and to prohibit the same from standing or waiting for business at any other places than the places so prescribed." (Section 64 and subd. 32 of section 64 of previous charter.)  Also by section 72 of the previous charter, the council is given the care, supervision and control of all public streets.  Of course, if the council has the power to enact an ordinance of this kind, the electors have the same power by means of the initiative election.  It is to be noted that appellant may use in his business any of the numerous streets in the city at all times without restriction, save only the streets whereon street cars operate over double tracks.  This cannot be held an unreasonable regulation, and the ordinance is not really open to the charge that it is prohibitory.  It simply excludes the doing of an intracity passenger traffic for hire upon streets where such business is adequately furnished, and where more public carriers would inconvenience and endanger public travel.

But there is another provision which gives the council power: "To regulate and control in a manner not contrary to any specific provision on the subject contained in this charter, the exercise by any person or corporation of any public franchise or privilege" (subdivision 84 of section 64 of the previous charter retained).  This does not conflict with section 80 of the present charter relating to the granting of a franchise.  To do business upon public streets is not a matter of right like the right of ordinary travel.  Nor is the right to carry on such a business to be placed upon the same basis as that of conducting a lawful occupation upon private property within a municipality.  The use of public streets for private enterprise may be for the public good, but even so it is a privilege that may be granted, regulated or withheld.  The authorities, without a discordant note, unless it be Curry v. Osborne, 76 Fla. 39, 79 South. 293, 6 A. L. R. 108, hold that a municipality having the care and control of its streets and the authority to look to their convenient and safe travel may regulate and even exclude the carrying on of a transportation business thereon for private gain, or grant the privilege to some and exclude others, since no one has a right as of course to carry on a private business upon the public streets.

In Ex Parte Dickey, 76 W. Va. 576, 579, 85 S. E. 781, L. R. A. 1915F, 840, this apt language is used: "The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage-coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader, the right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities."

The following decisions bear on the points herein discussed, and although the various municipalities involved did not have delegated to them the control of their streets or the power to license or grant privileges thereon in the same manner as has the city of Duluth, still there is sufficient similarity to make them pertinent against the various contentions advanced by appellant for the overthrow of this ordinance, viz: Schoenfeld v. City of Seattle (D. C.) 265 F. 726; Lane v. Whitaker (D. C.) 275 F. 476; Davis v. Massachusetts, 167 U. S. 43, 17 Sup. Ct. 731, 42 L. ed. 71; Packard v. Banton, 264 U. S. 140, 44 Sup. Ct. 257, 68 L. ed. 596; Birmingham Interurban Taxicab Service Corp. v. McLendon, 210 Ala. 525, 98 South. 578; Cutrona v. Mayor and Council of Wilmington (Del. Ch.) 124 Atl. 658; Star Transportation Co. v. Mason City, 195 Iowa, 932, 192 N. W. 873; Desser v. City of Wichita, 96 Kan. 820, 153 Pac. 1194, L. R. A. 1916D, 246; Scott v. Hart, 128 Miss. 353, 91 South. 17; West v. City of Asbury Park, 89 N. J. L. 402, 99 Atl. 190; Village of Perrysburg v. Ridgway, 108 Oh. St. 245, 140 N. E. 595; Fritz v. Presbrey, 44 R. I. 207, 116 Atl. 419; City of Memphis v. State ex rel. Ryals, 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 115, 1 Ann. Cas. 1917C, 1056; City of San Antonio v. Fetzer (Tex. Civ. App.) 241 S. W.

1034, a case of value since the supreme court of Texas and the supreme court of the United States refused to review it, as appears from City of San Antonio v. Stokes (Tex. Civ. App.) 246 S. W. 706; Allen v. City of Bellingham, 95 Wash. 12, 163 Pac. 331, 199 Pac. 457; McGlothern v. City of Seattle, 116 Wash. 331; Ex Parte Dickey, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840. We may also add here that impliedly the legislature by section 2711, G. S. 1923, permits municipalities to regulate "motor vehicles offered to the public for hire."

4. We cannot concur in the contention that the ordinance is an unlawful exercise of the police power of the city. It does not regulate or interfere with business conducted upon private property within the city as was the case in State v. Houghton, 134 Minn. 226, 158 N. W. 1017, L. R. A. 1917F, 1050; City of Virginia v. Erickson, 141 Minn. 21, 168 N. W. 821. And in regulating a private business conducted upon its streets, all of the streets are left to the free use of the business, except only the few upon which street cars are operated on double tracks. Surely the lawmaking body may well conclude that public welfare and safety demand business of the sort to be limited so as not to become a nuisance or a menace. Where double track streets cars operate, there cannot well be a crying demand for unlimited bus transportation, to say nothing of the danger and inconvenience of a number of competing busses speeding by each other and the street car in getting first to prospective fares at every street corner. There is no room for holding the ordinance unreasonable or arbitrary as a matter of law. With its wisdom as a regulatory or police power measure the courts have no concern. On this point the following authorities, in addition to those above cited, have a bearing: Frick v. City of Gary, 192 Ind. 76, 135 N. E. 346; City of New Orleans v. Calamari, 150 La. 737, 91 South. 172, 22 A. L. R. 106; Burgess v. Brockton, 235 Mass. 95, 126 N. E. 456; Melconian v. City of Grand Rapids, 218 Mich. 397, 188 N. W. 521.

5. Little need be said as to the claim that the ordinance impairs contract obligations between plaintiff and the city. Many of the above cited authorities deal with that question. Plaintiff holds no

franchise on the streets on which are double track street car lines, and, even if he had a license or privilege to operate thereon, it could be revoked and no contract rights affected. Burgess v. Brockton, supra, is particularly in point. Appellant has not shown himself to be in the situation of the plaintiff in Northwestern Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175. The incidental benefit the intervener may reap and the financial loss plaintiff may suffer because of the restriction of this ordinance are of no controlling weight. Gill v. City of Dallas, (Tex. Civ. App.) 209 S. W. 209.

The order is affirmed.