CRESCENT OIL COMPANY v. CITY OF MINNEAPOLIS
AND OTHERS.[1]

July 27, 1928.

No. 26,955.

**Minneapolis charter authorizes imposition of license on gasolene filling stations on private property.**
    1. Under the charter of Minneapolis the council has authority in the exercise of the police power to enact an ordinance requiring a license from those engaged in the conduct of gasolene filling stations located on private property.

**Whether fee imposed is a disguised tax left undecided—temporary injunction denied.**
    2. The ordinance exacts an annual license fee of $100 for each station and an additional $5 for each station having more than two pumps. There are 700 filling stations in Minneapolis. Whether an ordinance requiring such a fee is a license exacted in the exercise of the police power or a disguised tax should be left for decision upon the evidence; and the denial by the trial court of a temporary injunction against the enforcement of the ordinance, always involving an element of discretion, is affirmed.

Appeal and Error, 4 C. J. p. 940 n. 24.

    Plaintiff appealed from an order of the district court for Hennepin county, Reed, J. denying its motion for a temporary injunction. Affirmed.
    *Hadlick & Hadlick* and *Thomas Tallakson,* for appellant.
    *Neil M. Cronin,* City Attorney, and *Thomas B. Kilbride,* Assistant City Attorney, for respondents.

DIBELL, J.
    This is an action permanently to enjoin the defendant city of Minneapolis and its officers from enforcing an ordinance of the city requiring licenses of gasolene filling stations located on private

[1]Reported in 221 N. W. 6.

property and imposing a fee for their issuance. The plaintiff applied for a temporary injunction. It was denied. It appeals from the order denying it.

There are two questions:

(1)   Whether there is charter authority for the ordinance.

(2)   Whether the ordinance is valid as a proper regulation in the exercise of the police power or in effect imposes a tax and is therefore invalid.

1.   Section 5 of c. IV of the Minneapolis charter provides:

"The city council shall have full power and authority to make, ordain, publish, enforce, alter, amend or repeal all such ordinances for the government and good order of the city, for the suppression of vice and intemperance, and for the prevention of crime, as it shall deem expedient, and in and by the same to declare and impose penalties and punishments, and enforce the same against any person or persons who may violate the provisions of any ordinance, passed and ordained by it, and all such ordinances are hereby declared to be and to have the force of law. Provided, that they be not repugnant to the laws of the United States or of this State, and for these purposes the said city council shall have authority by such ordinances:

"First.—To license and regulate" etc.

There follow 45 specific grants of power. There is none to license or regulate filling stations, though paragraph 43 authorizes the council by ordinance to regulate storehouses for oil and powder, and houses for other specified kinds of business. The ordinance was sustained in Standard Oil Co. v. City of Minneapolis, 163 Minn. 418, 204 N. W. 165, so far as it involved the location of a filling station. In State v. Dirnberger, 152 Minn. 44, 187 N. W. 972, it was held, upon mature consideration, that a city might designate the location of laundries under the general welfare clause without specially conferred charter authority. This was followed in State v. Bjork, 157 Minn. 276, 195 N. W. 926 (marble yard for manufacture of stone monuments); State v. Amor & Co. 153 Minn. 244, 190

N. W. 59 (undertaking establishment); Meyers v. City of Minneapolis, 154 Minn. 238, 189 N. W. 709, 191 N. W. 609 (operation of stone quarry). In State v. Sugarman, 126 Minn. 477, 148 N. W. 466, 52 L.R.A.(N.S.) 999, it was held that an ordinance intended to prevent the obstruction of the streets by pedestrians was authorized by the general welfare clause.

The ordinance requires a permit or license from the city, a bond to save the city harmless from damages, prohibits the accumulation of snow or rubbish or unwholesome substances about the station, forbids the supplying of gasolene while the engine or motor is running, and forbids smoking in or about a station.

We are met by the claim that a general welfare clause is limited by the specific or express grants. The plaintiff cites the cases many of which are collected in City of Virginia v. Erickson, 141 Minn. 21, 24, 168 N. W. 821. The argument is not without force. There is however a tendency to permit the common council to legislate for the accomplishment of the objects mentioned in the general welfare clause though a specific grant is wanting. 4 Dunnell, Minn. Dig. (2 ed.) § 6763; City of St. Paul v. Fielding & Shepley, Inc. 155 Minn. 471, 194 N. W. 18; State v. Sugarman, 126 Minn. 477, 148 N. W. 466, 52 L.R.A.(N.S.) 999; Meyers v. City of Minneapolis, 154 Minn. 238, 189 N. W. 709, 191 N. W. 609. The maintenance of the "good order of the city" is not so remote from the fixing of the location and the regulation of filling stations, such as the ordinance under consideration provides, that it should be held that the charter does not authorize the ordinance. We conclude that filling stations on private property are subjects of municipal regulation in the exercise of the police power and that the charter authorizes the ordinance now attacked.

2. The plaintiff is the owner of several gasolene filling stations in Minneapolis located on private property. The ordinance requires a license for the operation of each station and imposes an annual fee of $100 and an additional $5 for each pump in excess of two. The claim is that the exaction of $100 for a license is a disguised tax. The tax on gasolene is fixed by L. 1925, p. 369, c. 297. Filling

stations are a necessity in modern motor traffic. The keeping of an oil supply upon the premises of auto users would be an intolerable source of inconvenience and of danger. Filling stations are usually well kept. They are not resorts for objectionable people. They are not loafing places. They are not of the character of many lines of business which easily tend to become nuisances.

The business conducted by a filling station is also regulated by statute. By G. S. 1923, § 3778, provision is made for gasolene and oil inspection. By G. S. 1923, § 5276, provision is made for the inspection of measures. There may be other state regulations. They are still subject, as stated in the first paragraph, to reasonable municipal regulation and to the requirement of a license.

There are 700 filling stations in Minneapolis. The license fees bring a return of upwards of $70,000 annually. In 1927 the fee was $30 per annum. It was increased to $100 per annum in 1928. Such an exaction savors much of a tax. There was evidence at the hearing that the city gave no particular care to the stations.

The issuance of a temporary injunction, either by granting it or refusing it, is largely discretionary. If one had been granted by the trial court there would be no difficulty in sustaining it. It is not apparent that the city will take an undue advantage of the filling stations by numerous prosecutions before the validity of the ordinance is determined in a judicial way. The question whether the imposition is a license or a tax is better determined upon a hearing in the regular course of legal procedure than upon affidavits upon an application for a temporary injunction. The order is sustained as a discretionary one without further suggestion as to the validity of the ordinance. The question can be determined upon injunction or upon a prosecution. If there is an effort upon the part of the city to compel the 700 stations to pay the fee by burdening them with oppressive prosecutions before the legal right can be determined in an orderly way, there is a remedy at hand.

Order affirmed.