## EDWARD M. TOUSLEY v. GEORGE E. LEACH AND OTHERS.[1]

May 9, 1930.

No. 27,401.

*James Fleming,* for appellant.
*Neil M. Cronin* and *Thomas B. Kilbride,* for respondents.

DIBELL, J.

Taxpayer's action to restrain the city of Minneapolis and its officers from paying the expenses of certain of its aldermen and other officers in attendance upon a meeting of the Mississippi Valley Association at St. Louis in November, 1928, and of the Rivers and Harbors Congress in Washington, D. C. and a meeting of the Asphalt Association at New Orleans, both in December, 1928. Plaintiff's motion for a temporary injunction was denied and he appeals.

Payment of the expenses was to be from moneys derived from taxation, and the claim of the plaintiff is that the purpose for which they were to be used was not a public one. The expenditure was formally authorized by vote of the council. We do not understand that serious claim is made that if the use was a public one there was not a proper fund from which to defray the expenses.

[1]Reported in 230 N. W. 788.

Minneapolis is governed by a home rule charter. It contains the usual general welfare clause and some 50 or more specifically enumerated grounds of legislation usual in the city charters of the state. It was formerly our holding that a narrow construction should be given to the legislative power conferred upon cities by its general welfare clause. City of Virginia v. Erickson, 141 Minn. 21, 168 N. W. 821, and cases cited. Commencing with State v. Dirnberger, 152 Minn. 44, 187 N. W. 972, there is a clearly noted departure in the direction of a less restricted rule; and now legislation not authorized in specific terms but in direct and necessary aid of a specific grant is sustained. State v. Dirnberger, 152 Minn. 44, 187 N. W. 972; State v. Bjork, 157 Minn. 276, 195 N. W. 926; State v. Amor & Co. 153 Minn. 244, 190 N. W. 59; Meyers v. City of Minneapolis, 154 Minn. 238, 189 N. W. 709, 191 N. W. 609; City of St. Paul v. Fielding & Shepley, Inc. 155 Minn. 471, 194 N. W. 18; Crescent Oil Co. v. City of Minneapolis, 175 Minn. 276, 221 N. W. 6; State v. Morrow, 175 Minn. 386, 221 N. W. 423. We cite these cases only as indicating the general trend of our decisions relative to municipal legislation. They do not decide the case nor resemble it in their facts. They do indicate something of a change of view.

The charter gives the common council specific authority "to control and regulate the construction of piers and wharves, or grading said wharves into the Mississippi river, * * * and to regulate the landings, levees, wharves and piers within the limits of said city * * *." C. 4, § 5, par. 22.

The city council has "the care, supervision and control of all highways, streets, alleys, public squares and grounds." C. 8, § 1.

It is authorized "to cause to be paved, repaved or macadamized any street or alley." C. 8, § 11.

It has general care, supervision and control of all streets, with the power to open new streets and alleys, etc. C. 8. It has complete authority to make improvements, including streets, and to make assessments therefor. C. 10.

The claim of the defendants, putting it briefly, is that the city was engaged in paving and constructing streets in the city and that there was under consideration by the government and partly accomplished the development on a large scale of a commercial deep waterway down the Mississippi to the Gulf of Mexico which would require the construction at Minneapolis of wharves, docks, piers, and the like, and necessary terminal facilities, all for the proper operation of river transportation to and from Minneapolis; and the claim is that all of the expenses incurred by its officers were in aid of these purposes and therefore were public.

The question is a vexing one and it is not new. The various executive and administrative departments of the state, state supported institutions, and many municipal corporations pay the expenses of their officers who visit conventions, conferences and congresses to bring back something of value. Private foundations, charitable and educational, do so probably more liberally. Private corporations for profit send their men. to meetings and conventions where information of value may be had. The thought is not that such trips are journeys for pleasure alone or merely cultural. They are supposedly of serious purpose in practical aid of public interests.

We note a few cases: James v. City of Seattle, 22 Wash. 654, 62 P. 84, 79 A. S. R. 957 (claim for expenses incurred by a member of the city council, under its authority, investigating other cities to secure information upon the subject of waterworks, street paving, street lighting, terminal facilities and the like; disallowed); Waters v. Bonvouloir, 172 Mass. 286, 52 N. E. 500 (appropriation of money by board of aldermen from contingent fund for expenses of mayor and certain aldermen in attending convention of American municipalities, where speeches pertinent to the administration of cities were to be considered, held unauthorized and subject to injunction); State ex rel. Marani v. Wright, 42 Ohio Cir. Ct. 202 (municipality not liable for expenses of official in attending convention of like officials); McCaffrey v. Mayor of Boston, 254 Mass. 50, 149 N. E. 659 (expenditure by council for trip to cities of country for purpose of investigating hospitals held invalid; statute pro-

hibited payment of anything for personal expenses in addition to salary) ; Smith v. Holovtchiner, 101 Neb. 248, 162 N. W. 630, L. R. A. 1917E, 331 (payment of expenses incurred by president of board of education and superintendent of schools in attending congress of school hygiene enjoined) ; Lake County v. Neuenfeldt, 78 Ind. App. 566, 136 N. E. 580 (expenses of superintendent of county poor asylum in attending meetings of various charity organizations disallowed) ; Beauchamp v. Snider, 170 Ky. 220, 185 S. W. 868 (expenses of county school superintendent attending sessions of educational association disallowed) ; Shanks v. Commonwealth, 219 Ky. 212, 292 S. W. 837 (expenses of state auditor in attending national convention of state auditors disallowed). These cases give support to the plaintiff, and many of them seem to indicate a restricted notion of what is proper public action.

If the purpose is a public one for which tax money may be used, and there is authority to make the expenditure, and the use is genuine as distinguished from a subterfuge or something farcical, there is nothing for the court. Whether there shall be such use is then one of policy for the legislature. The trial court finds that there was a public use and purpose. After a thorough consideration its view is that all was in good faith and that substantial beneficial results came to the city. Its position on this point is definite and positive.

That there are abuses connected with the expenditure of public money in traveling to meetings, conferences, conventions and public hearings is not to be questioned. Traveling at public expense gives a thrill and perhaps carries a sort of prestige. Men like it. It is to be hoped that unjustifiable running about the country with pleasure the real end and public service the excuse is lessening. So much has the practice prevailed without just cause that the word "junket," not bad in its derivation or early use, has come to be applied with a suggestion of shame and as indicative of a petty use of public money to traveling to such meetings.

The suggestion of the trial court is not without force that "more vigilance on the part of the electorate" would be appropriate. And

so it would be. The legislature might apply limitations. There are bad results. But we must appreciate that there is also much good faith and earnest effort and excellently good results. It may be noted that the legislature provides for municipalities joining the league of municipalities and paying membership fees out of public funds and from the same source paying the expenses of the delegates to such meetings. 1 Mason, 1927, § 1933-4. More than 300 municipalities now belong to the league, and the legislature thinks the good accomplished sufficient to justify the continuance of the legislation. This proves neither the advisability nor legality of action of the council now before us.

We accept the view of the trial court. There might be a difference of opinion as to some of the expenses authorized. From this distance it may appear that the council might well enough have sent a less number.

The appeal is from an order denying a temporary injunction, which is attended with discretion. That counsel wish a holding on the merits does not make it different.

Order affirmed.