Middleton, J.
Briefly stated, the question raised by the respondent and to be decided by this court is whether the Dayton commission has authority to expend the city’s funds for a membership in the Municipal Finance Officers Association'.
Under the Home Rule Amendment to the Ohio Constitution, adopted in 1912, the city of Dayton, along with all other municipalities of the state, derives all its “powers of local self-government” directly from the Constitution. That constitutional grant of power is “self-executing” and no legislative action is neces *323 sary to make it available to the municipality. Possession by the city of Dayton of all powers of local self-government is not dependent upon its adoption of a charter. Village of Perrysburg v. Ridgway, a Taxpayer, 108 Ohio St., 245, 140 N. E., 595.
These controlling principles have been reiterated many times by this court since the rendering of its decision in the Perrysburg case, supra.
Sections 2 and 3 of the charter of the city of Dayton provide:
“Section 2. The enumeration of particular powers by this charter shall not be held or deemed to be exclusive, but, in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof, the city shall have, and may exercise, all other powers which, under the Constitution and laws of Ohio, it would be competent for this charter specifically to enumerate.
“Section 3. General description: The form of government provided in this article shall be known as the ‘ commission-manager plan, ’ and shall consist of a commission of five citizens, who shall be elected at large in manner hereinafter provided. The commission shall constitute the governing body with powers as hereinafter provided to pass ordinances, adopt regulations, and appoint a chief administrative officer to be known as the ‘city manager,’ and exercise all powers hereinafter provided.”
The charter contains no provision which would prohibit the expenditure in question and none which would specifically authorize it. Therefore, the authority to make the expenditure, if such authority exists, is inherent as an incident of the powers of the municipality under the provisions of the Constitution, adopted in 1912. It must be considered well settled that the funds of a municipality can be expended only for public purposes. The object to be achieved or promoted by the *324 expenditure must be reasonably related to tbe operation of the municipal government. The rule is stated in 38 American Jurisprudence, 86, Section 395, as follows:
“It is well settled that if the primary object of an expenditure of municipal funds is to subserve a public purpose, the expenditure is legal although it may also involve as an incident an expenditure which, standing .alone, would not be lawful.”
In 15 McQuillin, Municipal Corporations (3 Ed.), 36, the author says :
“Furthermore, the fact that a municipality is expressly authorized to expend a certain sum without specification as to the purpose of the expenditure does not authorize it to expend funds for other than a public purpose. However, if the primary object is to sub-serve a public municipal purpose, it is immaterial that, incidentally, private ends may be advanced. Moreover, the public purposes for which cities may incur liabilities are not restricted to those for which precedent can be found, but the test is whether the work is required for-the general good of all the inhabitants of the city.
“What is a public municipal purpose is not susceptible of precise definition. While the question of what is and what is not a public purpose is initially a legislative responsibility to determine, in its final analysis, it is for the courts to answer.”
The problem of deciding what constitutes public purpose has always been difficult of solution. Texts and digests are quite uniform in their treatment of the subject.
“What is a public use is not capable of absolute definition. A public use changes with changing conditions of society, new appliances in the sciences, and other changes brought about by an increase in population and by new modes of transportation and com *325 munication. The courts as a rule have attempted no judicial definition of a public as distinguished from a private purpose, but have left each case to be determined by its own peculiar circumstances. Generally, a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipal corporation, the sovereign powers of which are used to promote such public purpose. The phrase ‘municipal purpose’ used in the broader sense is generally accepted as meaning public or governmental purpose as distinguished from private. The modern trend of decision is to expand and liberally construe the term ‘public use’ in considering state and municipal activities sought to be brought within its meaning. The test of public use is not based upon the function or capacity in which or by which the use is furnished. The right of the public to receive and enjoy the benefit of the use determines whether the use is public or private.
“The determination of what constitutes a public purpose is primarily a legislative function, subject to review by the courts when abused, and the determination of the legislative body of that matter should not be reversed except in instances where such determination is palpable and manifestly arbitrary and incorrect.” 37 American Jurisprudence, 734, 735, Section 120.
“There is no universal test for distinguishing between a purpose which is public or municipal and, therefore, a proper object of municipal expenditure and one which is private and, therefore, an improper object to which to devote public money. Each case must be decided in the light of existing conditions, with respect to the objects sought to be accomplished, the degree and manner in which that object affects the public welfare, and the nature and character of the *326 thing to be done; but the court will give weight to a legislative determination of what is a municipal purpose, as well as widespread opinion and general practice which regard as city purposes some things which may not be such by absolute necessity, or on a narrow interpretation of constitutional provisions. * * * It has been laid down as a general rule that the question whether the performance of an act or the accomplishment of a specific purpose constitutes a ‘public purpose’ for which municipal funds may be lawfully disbursed rests in the judgment of the municipal authorities, and the courts will not assume to substitute their judgment for that of the authorities unless the latter’s exercise of judgment or discretion is shown to have been unquestionably abused.” 64 Corpus Juris Secundum, 334, 335, Section 1835 b.
The necessity of the existence of the public purpose as the occasion for expending municipal funds and the difficulty of defining public purpose were recognized in the opinion written in 1891 by Judge Dickman in the case of State, ex rel., v. City of Toledo, 48 Ohio St., 112, 134, 26 N. E., 1061.
The commission, as the legislative body of the city of Dayton, considered membership in the Municipal Finance Officers Association of Ohio to be beneficial to the city as a whole and that the, expenditure for such membership therein would be for a public purpose. Those conclusions are set forth in the preamble of the ordinance as hereinabove quoted. This court does not find adequate reason for overriding the judgment of the Dayton commission.
This problem is not unique to Ohio. In one form or another it has been faced in all sections of the nation. With changing conditions and increasing complexity of government, the tendency of the courts has been toward greater liberality with respect to approval of expenditures by municipalities, which at an earlier
*327 .date might not have been considered as being for public purposes. The following illustrate what we believe to be the modern trend and the present weight of authority:
In City of Glendale v. White, 67 Ariz., 231, 194 P. (2d), 435, the Supreme Court of Arizona approved payment of dues in the Arizona Municipal League as being one “for a public purpose.”
In People, ex rel. Schlaeger, County Collector, v. Bunge Bros. Coal Co., 392 Ill., 153, 64 N. E. (2d), 365, the court approved payment by the city of Chicago of $3,000 as dues in the Illinois Municipal League and $3,000 as dues in the United States Conference of Mayors.
In Hays v. City of Kalamazoo, 316 Mich., 443, 25 N. W. (2d), 787, 169 A. L. R., 1218, payment of $517 as dues in the Michigan Municipal League was approved.
In City of Roseville v. Tulley, City Treas., 55 Cal. App. (2d), 601, 131 P. (2d), 395, the District Court of Appeals of California held that the city of Boseville could legally pay the expenses of two city councilmen, the city clerk and the city attorney as delegates to the annual conference of the League of California Cities, and that such expenditures were for a public purpose.
In Tousley v. Leach, 180 Minn., 293, 230 N. W., 788, the Supreme Court of Minnesota approved payment by the city of Minneapolis of expenses of certain of the city’s aldermen and other officers in attendance upon a meeting of the Mississippi Valley Association at St. Louis, a meeting of the Bivers and Harbors Congress at Washington, D. C., and a meeting of the Asphalt Association at New Orleans.
In reaching the conclusion that this court should not disapprove the action of the Dayton commission in authorizing the expenditure in question, we realize that such decision is in conflict with the previous decision of this court in State, ex rel. Thomas, v. Semple, *328 Dir. of Finance, 112 Ohio St., 559, 148 N. E., 342. In that case an expenditure of $100 by the city of Cleveland as dues for membership in the Conference of Ohio Municipalities was disapproved. That decision was relied upon by the respondent in the instant case as authority for refusing to pay dues in the Municipal Finance Officers Association of Ohio as directed by the Dayton commission. We do not undertake to distinguish the Semple case. In the last paragraph of the opinion in that case reference is made to the absence of express provision in the charter of the city of Cleveland relative to the contribution to the conference of Ohio municipalities. Such absence of specific charter authority is not, in our judgment, controlling. Assuming that the charter of Cleveland contained no prohibition against the expenditure, the authority of the city to make it would be derived from the Constitution, just as we have said in the instant case that the authority of the Dayton commission is derived from the Constitution, provided the expenditure is one for a public purpose. So far as the decision in the Semple case is inconsistent with the conclusions herein stated that decision is hereby overruled.
This court having concluded that the commission of the city of Dayton was justified in considering the expenditure in question as one for a public purpose, the demurrer to the answer is sustained and the writ of mandamus, as prayed for, is allowed.

Demurrer to answer sustained and writ allowed.

Weygandt, C. J., Zimmerman, ' Stewart, Taft, Matthias and Hart, JJ., concur.