## JOHN R. BORCHERT AND ANOTHER v. VILLAGE OF NORTH OAKS.

117 N. W. (2d) 396.

October 11, 1962—No. 38,756.

*Newcome, Wallace & Newcome,* for appellant.

*Kueppers, Strong & Kueppers* and *Harry P. Strong, Jr.,* for respondents.

NELSON, JUSTICE.

Appeal by the village of North Oaks from a judgment of the District Court of Ramsey County which declares a village ordinance invalid.

Plaintiffs, John R. Borchert and James F. Lindsay, who are residents, homeowners, taxpayers, and legally qualified voters in the village, brought a class action for themselves and in behalf of all other taxpayers in the village under the Uniform Declaratory Judgments Act, Minn. St. c. 555, to determine the validity of North Oaks Ordinance No. 15, as amended. (Reference to plaintiffs hereinafter will include all homeowners in whose behalf the action was brought.) The challenged ordinance limits and prescribes maximum speeds of vehicles driven in the village on "any highway, street, private road or road-

way," and prescribes other requirements to be observed by drivers using said roads.

North Oaks was duly organized and incorporated as a village in 1956 under Minn. St. c. 412. The village is unique in that only a few of its roads are public. The legal title to the tracts of real estate in the village owned by plaintiffs is derived from a common grantor, North Oaks Company, Inc. The deeds to this corporation and the individual conveyances by it to plaintiffs contain identical reservations, easements, and restrictions with respect to certain portions of the conveyed tracts to be used as private roads by, and only by, plaintiffs and their heirs, assignees, licensees, guests, and invitees. These restrictions, which apply to all the land in the village, contemplated the construction of a system of private roads which the corporation actually has constructed; give all homeowners general rights of access on and over such roads; proscribe their building or permitting roads or driveways into or across their premises to any public highway without the consent of the corporation; and reserve to it the power to make assessments against each owner of property in the area for road maintenance and similar expenses. The corporation could assign this power to North Oaks Homeowners' Association, Inc., a nonprofit corporation, membership of which is confined to plaintiffs.

Based on a stipulation thereto by the parties which was introduced in evidence, the court found the facts hereinafter stated.

Over 200 families own their residential property and are living in the village. The part of each conveyed tract reserved for private roads was laid out by the North Oaks Company, Inc., in order to provide the contemplated system of private roads. These roads have been paved, maintained, and improved by the North Oaks Homeowners' Association, Inc., and the cost is being defrayed by proportionate assessments levied by the association against its members. The roads were never platted nor dedicated to the public and no public funds have been, or are being, expended by the village in their construction, maintenance, or improvement. The users of the private road system have ingress and egress thereto and therefrom at three separate locations in the village where the private roads connect with public streets

or highways. Gates at these points are controlled so as to admit only plaintiffs and their assigns, licensees, guests, and invitees; and a large sign at each entrance reads: "Trespassers Prohibited—Private Property." Under a village ordinance making it a misdemeanor to trespass on private property, over 50 persons have been convicted of trespassing in cases where their only act was to drive an automobile on the private roads without permission. During the daylight hours the private roads are used by United States mail trucks, public school buses, tradesmen, and other licensees and invitees of plaintiffs, public traffic on the private roads averaging approximately 650 vehicles daily. At all other times the roads are used by plaintiffs, members of their families, and their licensees and invitees driving vehicles of various kinds.

The council of the village enacted Ordinance No. 15 on August 14, 1958. Plaintiffs contend that this ordinance, as amended, is invalid and unenforceable for the following reasons:

"(a) The provisions of said Ordinance conflict and are inconsistent with the State-wide traffic regulatory scheme, purpose and the provisions of the Highway Traffic Regulation Act (Chapter 169, Minnesota Statutes), particularly Sections 169.02, 169.03, 169.05, 169.09 to 169.13, inclusive, 169.91, 169.95, 169.96 thereof.

"(b) Said Ordinance attempts to invade a field pre-empted by the State of Minnesota.

"(c) Said Village is not vested with legislative power to restrict or regulate the speed or other operation of vehicles driven on or using such private roads, such power having been retained or withdrawn by the State and not delegated to the Village.

"(d) The right and power to restrict or regulate the speed or other operation of vehicles driven on or using said private roads is not within the police power of said Village nor is said legislative power vested in the Defendant Village by Section 412.221, Minnesota Statutes, or any other statutory provision."

Plaintiffs further contend that defendant is making use of village funds, and plans to do so increasingly, to defray the cost of purchasing road signs and providing police and other law-enforcement of-

ficers to administer the ordinance. Plaintiffs assert that such use of village funds is unlawful.

The trial court found the ordinance invalid and unenforceable, setting forth its reasons in the following findings of fact:

"That the Highway Traffic Regulation Act (Chapter 169, Minnesota Statutes) is a comprehensive state-wide traffic regulatory scheme, and upon passage of this Statute, the State of Minnesota has entered exclusively in the field of traffic regulation on both public and private roads and thereby the State of Minnesota has pre-empted the authority and power of local political subdivisions in this field.

"That the existence and enforcement of the Village Ordinance No. 15 as amended relating to 'private roads' would conflict with the provisions of the Minnesota Highway Traffic Regulation Act (Chapter 169, Minnesota Statutes) and the Minnesota Drivers License Law (Chapter 171, Minnesota Statutes).

"That the State of Minnesota has not delegated the right and power to the defendant Village of North Oaks to restrict the speed or other operation of motor vehicles being driven on or using said private roads.

"That the power and right to restrict or regulate speed and other operation of motor vehicles on said private roads is not within the 'police power' of the Village, nor is such power vested in the said Village either under the common law or by Chapter 412, Minnesota Statutes.

"That the defendant Village of North Oaks is and was without authority to enact said Ordinance No. 15 as amended, or to legislate with reference to the restriction or regulation of speed or other operation of vehicles operating on or using said private road system within the defendant Village, and is and was without authority to administer or enforce such Ordinance or legislation or to use Village funds for that purpose."

The court's conclusion was that the ordinance was invalid and that village funds could not be used to administer, police, or enforce it.

Defendant in its assignments of error contends that the foregoing

findings, conclusion, and the judgment entered pursuant thereto are not sustained or justified by the evidence and are contrary to law.

The legal questions involved on this appeal are: (1) Whether a village organized and incorporated under Minn. St. c. 412 is empowered thereby to regulate vehicular traffic on a private road system in the village by ordinance; and (2) if a village is so empowered by c. 412, did the legislature withdraw or preempt such power upon enactment of cc. 169 and 171?

The finding of the trial court that c. 169 preempts the authority and power of local political subdivisions in the field of traffic regulation cannot be sustained. Section 169.03 specifically provides:

"* * * Local authorities may adopt traffic regulations which are not in conflict with the provisions of this chapter; provided, that when any local ordinance regulating traffic covers the same subject for which a penalty is provided for in this chapter, then the penalty provided for violation of said local ordinance shall be identical with the penalty provided for in this chapter for the same offense."

This statute makes it clear that defendant had authority to enact Ordinance No. 15 and any amendment thereto unless provisions of the ordinance are in conflict with Minn. St. c. 169.

Nor can the finding of the trial court that the power to regulate traffic is not within the police power of the village be sustained. Even in the absence of § 169.03, defendant would have the power to regulate traffic under the general welfare clause found in § 412.221, subd. 32, which reads as follows:

"The village council shall have power to provide for the government and good order of the village, the suppression of vice and immorality, the prevention of crime, the protection of public and private property, the benefit of residence, trade, and commerce, and the promotion of health, safety, order, convenience, and the general welfare by such ordinances not inconsistent with the constitution and laws of the United States or of this state as it shall deem expedient."

This court has heretofore held that a municipal corporation has the power under such a clause to regulate the use of private as well as public property. Crescent Oil Co. v. City of Minneapolis, 175 Minn.

276, 221 N. W. 6; State v. Morrow, 175 Minn. 386, 221 N. W. 423; State v. United Parking Stations, Inc. 235 Minn. 147, 50 N. W. (2d) 50.[1]

The foregoing cases involve property which, though private, was generally used by the public without reservation, a situation somewhat different from the present one. Nevertheless, whatever the extent of police power over ordinary private roads which are not freely used by the public, that power must be held to extend to such private roads where they comprise the whole road system of a village. The scope of the police power is stated in 62 C. J. S., Municipal Corporations, § 128, as follows:

"* * * It covers a wide range of subjects, and, while it is especially occupied with whatever affects the peace, security, health, morals, and general welfare of the community, it is not limited thereto, but extends to dealing with conditions which exist so as to bring out of them the greatest welfare of the people by promoting public convenience or general prosperity, and to everything expedient for the preservation of comfort of the inhabitants of the corporation. * * * That which may at one time be regarded as not within such power may, at another time, by reason of changed conditions, be recognized as a legitimate subject for the exercise of the power. Also, that which may be regarded as within the police power of one municipal corporation may not be so regarded as to another."

While the trial court found that the legislature has not specifically delegated to defendant the power to regulate traffic on private roads, this power finds ample authority in §§ 169.03 and 412.221, subd. 32. The legislature has specifically stated that the provisions of c. 169 do not apply to private roads. Section 169.02, subd. 1, provides:

"The provisions of this chapter relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways, and upon highways, streets, private roads, and roadways situated on prop-

[1]See, also, Severkson v. City of Minneapolis, 204 Minn. 388, 283 N. W. 555, 120 A. L. R. 944; The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244.

erty owned, leased, or occupied by the Regents of the University of Minnesota, or the University of Minnesota, except:

"(1)   Where a different place is specifically referred to in a given section;

"(2)   The provisions of sections 169.09 to 169.13 shall apply upon highways and elsewhere throughout the state."

Section 169.05 provides:

"Nothing in this chapter shall be construed to prevent the owner of real property used by the public for purposes of vehicular travel by permission of the owner and not as a matter of right, from prohibiting such use, or from requiring other or different or additional conditions than those specified in this chapter, or otherwise regulating such use as may seem best to such owner."

Plaintiffs apparently have taken the position that since the legislature has not extended traffic regulations to private roads, any such regulation by a municipality necessarily conflicts with state law. For example, they contend that since § 169.98, which requires uniform markings and colors of vehicles primarily used for enforcement of highway traffic regulations, does not apply to private roads, and village police vehicles may therefore have different markings and colors, enforcement of the ordinance would conflict with state law. This is not the type of conflict against which § 169.03 was intended to guard. It is only where both the local law and the state law seek to govern the same conduct that conflict is possible. This is not such a situation. See, State v. Hughes, 182 Minn. 144, 233 N. W. 874; State ex rel. Stone v. Eck, 121 Minn. 202, 141 N. W. 106.

Likewise, plaintiffs' contention that Ordinance No. 15, as amended, conflicts with Minn. St. c. 171, in that the demerit point system would not apply to violations occurring on a private road, has no standing. Not only is there no conflict between the ordinance and c. 171, but § 169.03 is concerned only with ordinances which conflict with c. 169.

We reach the conclusion that Ordinance No. 15, as amended, is valid and that funds of the village of North Oaks may be used to enforce its provisions. The judgment of the trial court is accordingly reversed.

Reversed.