# STATE EX REL. C. H. REMICK v. LOUIS CLOUSING.[1]

May 12, 1939.

No. 31,976.

[1]Reported in 285 N. W. 711.

*R. S. Wiggin*, City Attorney, and *John F. Bonner*, Assistant City Attorney, for appellant (respondent below).

*Keyes, Pardee, Solether & Carr*, for respondent (relator below).

*John A. Goldie* filed a brief *amicus curiae* as attorney for Minnesota State Federation of Labor.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order sustaining demurrer to respondent's answer in a proceeding in *mandamus* to compel the building inspector of the city of Minneapolis to issue a plasterer's permit to petitioner.

The case involves the validity of an ordinance, part of the building code of Minneapolis, requiring a license from the city council as a condition precedent to the issuance of a permit to carry on the business of plastering. Petitioner claims that he is qualified to obtain but admits that he has not applied for or obtained a license. He contends that the ordinance requiring him to obtain the license is invalid for a number of reasons which will be considered in the body of this opinion. The trial court concluded that the ordinance was void.

The enactment in question reads:

"SECTION 2401. *Plasterer's License Required.* No person, firm or corporation shall do or install any plastering, stucco or lathing work for which a permit is required by the ordinances of the City of Minneapolis, or carry on the business of plastering, or stucco work or lathing, without having first secured a Plasterer's License from the City Council of said city authorizing him or them so to do and paying the fee hereinafter provided for. * * *

"2401. 2. *Fee:* The license fee for each such license is hereby fixed at the sum of Twenty-five Dollars ($25.00) per annum. * * *

"2401. 3. *Licenses Not Required For Journeymen and Appren-*

*tices:* Provided, however, that nothing in this ordinance shall be construed to require persons working only as journeyman plasterers, stucco workers or lathers, or their helpers or apprentices, to procure the license herein required. * * *

"2401. 8. *All Work to Be Done Under Supervision of Licensee:* All plastering, stucco and lathing work done in the City of Minneapolis shall be done under the immediate supervision and control of a person duly licensed under the provisions of this ordinance.

"SECTION 2402. *Permits.* It shall be unlawful for any person, firm or corporation to commence or proceed with any inside plastering * * * without first obtaining and having a permit therefor from the Inspector of Buildings, or to fail or neglect to comply with the provisions of this ordinance relating to plastering, * * *. Provided, however, that no permit shall be required for any job of inside plastering work not exceeding one hundred (100) square yards, * * *."

■ The first question presented is: Does the city charter of Minneapolis authorize the passage of an ordinance requiring plasterers to be licensed? Chapter 4, Section 5, of the charter provides:

"The City Council shall have full power and authority to make, ordain, publish, enforce, alter, amend or repeal all such ordinances for the government and good order of the city, * * * as it shall deem expedient, and in and by the same to declare and impose penalties and punishments, and enforce the same against any person or persons who may violate the provisions of any ordinance, passed and ordained by it, and all such ordinances are hereby declared to be and to have the force of law. Provided, that they be not repugnant to the laws of the United States or of this State, and for these purposes the said City Council shall have authority by such ordinances: * * *

"Thirty-second.—To regulate the construction of all buildings within said city; * * *"

The fact that plasterers are not specifically mentioned in the charter does not preclude the enactment of an ordinance requiring

them to be licensed. This court has held on numerous occasions that the general welfare clause is not limited to the things enumerated and that it authorized the regulation and licensing of businesses not specifically referred to in the charter. State v. Morrow, 175 Minn. 386, 221 N. W. 423; Crescent Oil Co. v. City of Minneapolis, 175 Minn. 276, 221 N. W. 6, and cases cited therein. The welfare clause contained in the charter is intended to make the powers of the council sufficiently expansive to enable them to meet and provide for new conditions as they arise. State v. Morrow, *supra*. It is not to be strictly construed. Tousley v. Leach, 180 Minn. 293, 230 N. W. 788. The first query is therefore answered in the affirmative.

■ We now ask: Is the ordinance invalid because in excess of limitations upon governmental power imposed by state and federal constitutions? Ordinances requiring a license from the city council as a condition precedent to carrying on a given trade or business have been upheld as a valid exercise of the police power. Thus in State v. Dirnberger, 152 Minn. 44, 187 N. W. 972, it was held that an ordinance of the city of Minneapolis providing that no person shall operate a laundry without first obtaining a permit from the council was within the charter-granted powers of the city. In State v. Amor & Co. 153 Minn. 244, 190 N. W. 59, an ordinance providing that no person carry on the business of undertaking in the city without a permit was held to be valid. And in Meyers v. City of Minneapolis, 154 Minn. 238, 189 N. W. 709, 191 N. W. 609, it was held that a permit for the operation of a stone quarry could validly be demanded by ordinance. Other jurisdictions have held that licenses may be required for the installation of warm-air heating plants. (City of Chicago v. Wonder H. & V. Systems, Inc. 345 Ill. 496, 178 N. E. 192); conducting a private detective agency (Lehon v. City of Atlanta, 242 U. S. 53, 37 S. Ct. 70, 61 L. ed. 145); and engaging in the business of contracting (Alvarado v. Davis, 115 Cal. App. [Supp.] 782, 6 P. (2d) 121; State ex rel. Reynolds v. City of St. Petersburg, 133 Fla. 766, 183 So. 304, 118 A. L. R. 667). See, generally, Rottschaefer, Constitutional Law, pp. 466-476.

It seems quite clear that the business of plastering is as fraught with the possibility of danger to the physical well-being of the public as are the occupations mentioned above. We consider it highly probable that plaster improperly applied would fall from ceilings and walls and cause serious harm to persons within the range of danger.

■ Respondent contends that the fee charged for the license is excessive since more than the cost of issuance and police supervision. The answer, the demurrer to which was sustained, reads:

"That the fee of $25 per year prescribed by said ordinance for a plasterer's license is no more than sufficient to cover the cost of issuing the same and the supervision required thereby."

A demurrer admits all the facts well pleaded in the pleading to which it is directed and all necessary inferences or conclusions of law, whether stated or not, which follow from facts well pleaded. Harriet State Bank v. Samels, 164 Minn. 265, 204 N. W. 938. The admission does not extend to facts of which the court will take judicial notice. 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7520. The allegation of a fact contrary to that of which the court takes judicial notice will be disregarded. Wadhams Oil Co. v. Tracy, 141 Wis. 150, 123 N. W. 785, 18 Ann. Cas. 779; Cooke v. Tallman, 40 Iowa, 133; Chavez v. Times-Mirror Co. 185 Cal. 20, 195 P. 666.

The question to be determined, therefore, is whether a license fee of $25 per year for plasterers is so excessive as to justify the trial court in concluding that it was unreasonable without the aid of evidence.

License fees must be reasonable, but a court will not declare them unreasonable unless they are palpably so. The general rule is that a reasonable license fee should be intended to cover the cost of issuing it, the services of officers, and other expenses directly or indirectly imposed. City of St. Paul v. Colter, 12 Minn. 16 (41), 90 Am. D. 278; State v. Hoffman, 159 Minn. 401, 199 N. W. 175.

It is entirely probable that the license fee charged was intended to cover and is used to cover not only the cost of investigating the qualifications of the applicant, determining his competency, and

issuing the license, but also to defray the expense of inspecting and supervising the work subsequently done by him in order to ascertain if it complies with requirements fixed by law. It is true that in addition to the license fee charged a sum is required for necessary permits before plastering is begun. But this latter assessment may cover only a small proportion of the necessary expense of supervision. In the absence of evidence to the contrary, we have no basis for concluding otherwise. Judicial notice is to be taken with caution, and every reasonable doubt as to the propriety of its exercise in a given case should be resolved against it. Baxter v. McDonnell, 155 N. Y. 83, 49 N. E. 667, 40 L. R. A. 670. And in view of decisions which have held not excessive a fee of $20 per year for laundries (City of Irvine v. Bergman, 220 Ky. 804, 295 S. W. 1041) and an annual fee of $25 for plumbers (Rock v. Philadelphia, 328 Pa. 382, 196 A. 59, 114 A. L. R. 567), we feel that the trial court was not justified in concluding, without the aid of evidence and in spite of allegations contained in the answer, that the annual license fee exceeded the amount requisite to cover the legitimate expenses incidental to issuance of the license. See State v. Hoffman, 159 Minn. 401, 199 N. W. 175; Village of Minneota v. Martin, 124 Minn. 498, 145 N. W. 383, 51 L.R.A.(N.S.) 40, Ann. Cas. 1915B, 812; State v. Jensen, 93 Minn. 88, 100 N. W. 644; State ex rel. Minces v. Schoenig, 72 Minn. 528, 75 N. W. 711; City of Duluth v. Marsh, 71 Minn. 248, 73 N. W. 962; City of Duluth v. Krupp, 46 Minn. 435, 49 N. W. 235. In re White, 43 Minn. 250, 45 N. W. 232. Where the fees charged do not appear to be manifestly disproportionate to the services rendered, we cannot say from our own knowledge or experience that they are excessive. Clark v. Paul Gray, Inc. 306 U. S. 583, 59 S. Ct. 744, 83 L. ed. —.

■ Other objections to the ordinance premised on constitutional grounds require no extended discussion. It is argued that discrimination results from provisions which are to the effect that while a firm or corporation engaged in plastering an area in excess of 100 square yards must be licensed, journeymen plasterers, persons working under the direct supervision of a licensee, and persons engaged in applying plaster on a job covering less than 100 square

yards need not be. This classification does not violate either the state or federal constitutions. The lawmaking body is not required to legislate for all persons alike, but it must treat all alike who are in the same condition. The persons subjected to the law may be classified, but the classification must not be fanciful or arbitrary. It must rest on some principle which may naturally or properly distinguish or disclose the necessity or propriety of different legislation. State v. Dirnberger, 152 Minn. 44, 46, 187 N. W. 972. See also State ex rel. McCue v. Sheriff of Ramsey County, 48 Minn. 236, 51 N. W. 112, 31 A. S. R. 650; State ex rel. Luria v. Wagener, 69 Minn. 206, 72 N. W. 67, 38 L. R. A. 677, 65 A. S. R. 565; State ex rel. Greenwood v. Nolan, 108 Minn. 170, 122 N. W. 255; Clark v. Paul Gray, Inc. *supra.* To excuse one doing plastering work limited in extent from obtaining a license is reasonable in that there may well be little danger to the public in such cases. To excuse one working under the direct supervision of a licensee from obtaining a license is also reasonable since the purpose of the ordinance, that of insuring skillful application of plaster, can be as well realized where the actual work is done by one under the immediate supervision of another whose competency has been tested as it can be where the latter actually does the work himself. The classification in these respects is neither fanciful nor arbitrary and must be sustained. We do not consider the other particulars in which the respondent contends that the ordinance is discriminatory for the reason that he is not within the class against which such discrimination is directed.

■ Finally, it is proposed that the ordinance is unconstitutional in that it delegates: (1) Arbitrary power to the council, and (2) undue discretion to the building inspector. Objection to the first mentioned particular cannot be asserted until application for a license has been made and refused. State ex rel. Rose Bros. L. & S. Co. Inc. v. Clousing, 198 Minn. 35, 268 N. W. 844. Objection to the second particular finds no support in the relevant provisions of the ordinance.

■ The theory that the ordinance exceeds the restrictions of the title is unsound. See Apartment Operators Assn. v. City of Minne-

apolis, 191 Minn. 365, 254 N. W. 443; State v. Helmer, 169 Minn. 221, 211 N. W. 3.

Order sustaining demurrer reversed.

Mr. Justice Hilton, being incapacitated by illness, took no part.