FARIBAULT–MARTIN–WATONWAN HUMAN SERVICES, ex rel. Margaret JACOBSON, Petitioner, Appellant,

v.

Darrell Duane JACOBSON, Respondent.

No. C2–84–1207.

Court of Appeals of Minnesota.

Feb. 26, 1985.

Arvid Wendland, Faribault County Atty., Robert L. Hammond, Jr., Asst. Faribault County Atty., Blue Earth, for appellant.

Jerome T. Anderson, Johnson & Moonan Law Firm, Mankato, for respondent.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

### OPINION

LANSING, Judge.

Appellant Faribault-Martin-Watonwan Human Services Board commenced this action ex rel Margaret Jacobson after she assigned to the Board all her rights and claims against respondent Darrell Jacobson based on her receipt of AFDC payments from the Board since 1962. The county appeals the trial court's award of $2,346.25 in arrearages. We affirm in part, reverse in part, and remand.

### FACTS

The parties agreed to a stipulation of facts. Darrell and Margaret Jacobson were divorced in 1962 in Mankato, Minnesota, by judgment entered after a stipulation. They had four children, all minors at the time of the divorce. Final judgment listed

child support at "$175.00 per month for the support and maintenance of the minor children of the parties." The judgment did not conform to the parties' understanding, and for purposes of this action they agreed that Darrell Jacobson's obligation should have been $155 per month, with payments made at $35 per week.

In December 1971 Margaret Jacobson brought a URESA petition against Darrell Jacobson, who then lived in Nevada. After a hearing, the Nevada district court entered an order for support dated January 25, 1972, requiring Darrell Jacobson to pay $40 per month per child for the three children who were still minors at the time. The same court entered two subsequent orders. The first reduced child support by $40 per month when one child became emancipated; the second reduced child support by $40 per month when another child went to live with Darrell Jacobson in Nevada, leaving him with a total obligation of $40 per month. None of the Nevada orders refer to the Minnesota decree or expressly purport to modify it.

Darrell Jacobson moved back to Minnesota in 1974. He discussed child support with representatives of the child support enforcement unit of Faribault County and was told that Faribault County would take no further action at that time as long as he continued to pay the $40 per month as ordered. The Faribault County Human Services Center discussed with him the fact that he had approximately $19,000 in child support arrearages. He disputed the amount, saying it should be calculated at $155 per month rather than $175. Faribault County indicated it would not proceed for the arrearages as long as Darrell Jacobson continued paying as ordered in Nevada and that its policy is not to bring an obligor into court until the obligor stops making support payments or the children become emancipated. This position was described in a letter to Darrell Jacobson dated December 15, 1977.

Faribault County commenced this action in January 1979, after Darrell Jacobson inherited part of his father's estate. He raised the statute of limitations as a defense. The parties stipulated that the statute limits this action to payments owed for the period from February 1, 1969, through the end of April 1978. However, they disputed the amount of child support actually paid between February 1, 1969, and January 1, 1972. Margaret Jacobson claimed none was paid, and Darrell Jacobson claimed $155 per month was paid. They stipulate to payment of half the $155 monthly payments.

The trial court awarded Faribault County $2,346.25 in arrearages plus costs and disbursements. In calculating the award the trial court divided the stipulated monthly child support, $155, by four to arrive at a figure of $38.75 per month per child. The award is based on that per-child obligation, which was reduced proportionately as the children reached majority or left Margaret Jacobson's home. The court took into account the half-payments stipulated for February 1, 1969, through January 1, 1972.

The trial court also determined that Faribault County, by its delay in bringing this action, must be deemed to have acquiesced in the orders of the Nevada court and consequently waived the arrearages accrued under the original Minnesota order.

## ISSUES

1. Did the support order issued by the Nevada court modify the support obligation under the original Minnesota decree?

2. Did the trial court err in retroactively reducing the support obligation as the children became emancipated or no longer resided with Margaret Jacobson?

3. Does the doctrine of laches or any other equitable defense preclude recovery of any of the arrearages claimed?

## ANALYSIS

### I

Darrell Jacobson contends that the Nevada court's support orders modified the original Minnesota decree and that he therefore

is not liable for arrearages greater than those accrued under the Nevada orders.

■ Under Nevada law at the time these orders were entered, a support order in a URESA proceeding modified the original decree if the order specifically provided for such modification. *See Foster v. Marshman,* 96 Nev. 475, 611 P.2d 197 (1980); *Peot v. Peot,* 92 Nev. 388, 551 P.2d 242 (1976). We must conclude that under Nevada law, the Nevada orders did not modify the original Minnesota decree because none of the Nevada orders referred to the original decree or specifically purported to modify it in any way.

■ A similar result is reached if Minnesota law is applied. The effect of a responding court's order on the original support obligation was not entirely clear under Minn.Stat. §§ 518.41–.53 (1971). *Compare* Minn.Stat. § 518C.20 (1982) (a RURESA support order does not nullify an existing order "unless specifically provided by the court.") However, *Matson v. Matson,* 333 N.W.2d 862 (Minn.1983), addressed the issue whether a 1968 URESA order modified a 1961 decree. The *Matson* court said that, assuming the responding Minnesota court had the authority to modify a Wisconsin support judgment in a URESA proceeding, Minn.Stat. § 518.18 clearly required one of the parties to petition for modification of support obligations. *Id.* at 865. The 1972 URESA order does not expressly modify the decree; consequently, Jacobson's support obligation under the original decree was not modified. The two subsequent Nevada orders merely decreased support in accordance with the first decree issued by the Nevada court.

Under either Nevada or Minnesota law, the arrearages on the support obligation were fixed by the original decree, not by the obligation imposed by the Nevada court in the URESA action. The trial court's determination on this issue is correct.

## II

The trial court went on, however, to calculate arrearages based on a monthly per-child figure of $38.75, which was reduced proportionately each time a child became emancipated. The court explained this reduction by taking judicial notice of the Minnesota fifth judicial district's standard practice in 1962 of reducing child support proportionately as children became emancipated.

■ Rules of court may be judicially noticed without formal proof. *See McCormick's Handbook of the Law of Evidence,* § 330, at 765 (E. Cleary 2d ed. 1972). However, the trial court noticed a general practice in awarding child support, rather than a rule of court. *See Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 184, 84 N.W.2d 593, 604 (1957) ("[R]ules [are] limited to governing the procedure in the district courts of this state and [are] not in any respect to legislate where substantive law is involved."); *National Recruiters, Inc. v. Toro Co.,* 343 N.W.2d 704, 708 (Minn.Ct.App.1984) (citing *Remick v. Clousing,* 205 Minn. 296, 285 N.W. 711 (1939)) ("[j]udicial notice is to be taken with caution and every reasonable doubt as to the propriety of its exercise in a given case should be resolved against it").

■ The fifth district's practice does not fit any accepted category of judicial notice. It is not a properly noticeable adjudicative fact—a fact generally known or capable of accurate and ready determination, *see* Minn.R.Evid. 201; *McCormick's Handbook of the Law of Evidence,* § 328, at 758—and it is not a properly noticeable legislative fact, generally confined to social and socioecomonic data on which courts may rely in considering expediency and public policy, *see McCormick,* § 331, at 766–67 (citing cases). Judicial notice therefore is not a sufficient basis for this retroactive modification.

## III

■ The trial court also relied on Faribault County's acquiescence and waiver to support the retroactive reduction in child support. Faribault County, however, did not voluntarily acquiesce in the orders and

waive the arrearages, as evidenced by this proceeding. Consequently, the trial court's holding is tantamount to a determination of equitable estoppel. The Minnesota Supreme Court has specifically stated that "equitable defenses are not available in an action based on accrued payments due under [a] decree of divorce." *Ryan v. Ryan*, 300 Minn. 244, 251 n. 2, 219 N.W.2d 912, 916 n. 2 (1974) (citing *Richter v. Richter*, 126 N.W.2d 634 (N.D.1964)). Although *Ryan* involved accrued alimony payments, the rule is even more appropriate in an action for accrued child support arrearages because the child's right to support must be protected. *See Paterson v. Paterson*, 73 Wis.2d 150, 242 N.W.2d 907 (1974).

Faribault County agreed not to attempt to collect arrearages until the last child attained majority, but it did not mislead Jacobson into believing he was no longer obligated for those arrearages. Although the parties stipulated that Faribault County indicated to Jacobson that it would not proceed for arrearages as long as he continued to pay as ordered, they further stipulated "that [the county's] policy was not to bring [Jacobson] into court so long as he was making the payments until such time as he quit making child support payments or in such cases as where the child support obligation had ceased due to the children reaching majority or becoming emancipated." Jacobson's attorney stated at trial that he "was not contending that they [Faribault County] ever told [Jacobson] that if he continued paying $40.00 a month that any claimed arrearages would be forgiven." Faribault County's 1977 letter to Jacobson expressly states:

> Assuming you continue to make your monthly payments in full, as of 6–30–78 your support order will end and leave you with an arrearage of $19,295. At that time we will take you to court to get a judgment against you for that amount. It is likely that an order will be drawn up upon which you will have to continue making monthly payments on the arrearage.

■ The County may have had legitimate reasons for not proceeding for arrearages until the support obligation ended. It may not have wanted to jeopardize continued payment of support by involving Darrell Jacobson in a lawsuit while there were still minor children. Faribault County's delay after the support obligation ended was minimal, only about six months, and it now is proceeding only for arrearages accumulated within the statute of limitations period. The action is not barred by either the equitable defenses relied on by the trial court or by laches, the defense claimed by Darrell Jacobson.

■ The trial court retroactively modified the support order without considering the factors set out in Minn.Stat. § 518.64 (1982 & Supp.1983). Because of the limited record, we do not know whether the original lump-sum child support provision resulted from inadvertence or was specifically negotiated because it was mutually advantageous in the parties' financial situation. Even if it resulted from inadvertence, however, retroactive modification is not appropriate. The burden to modify an arguably ambiguous order should logically fall on the obligor, who has the incentive to request a clarification that would decrease the support burden under the decree.

The parties' stipulation includes agreements on the obligation under the decree, disputed payments, and application of the statute of limitations. We remand for computation of the exact amount of arrearages in accordance with the stipulation and this opinion.

## DECISION

The trial court correctly based arrearages on the original Minnesota decree but erred in reducing the obligation proportionately as the children became emancipated or no longer resided with the obligee. No equitable defense bars recovery of arrearages. We remand to the trial court for computation of arrearages.

Affirmed in part, reversed in part, and remanded.

LESLIE, J., dissents.

LESLIE, Judge, dissenting.

I respectfully dissent. The majority opinion reaches a result which I do not believe is legally correct and overlooks the justice of the matter. The trial court held that Darrell Jacobson was liable for arrearages. It calculated those arrearages by proportionately reducing his support obligation according to the size of Margaret Jacobson's dependent family. The trial court made the proportionate reduction using what I believe are two sound legal considerations.

The trial court applied the practice of the fifth judicial district in 1962 to reduce proportionately child support obligations as the children become emancipated. The majority opinion characterizes this action as a retroactive reduction of Darrell Jacobson's obligation and as an improper use of judicial notice. I disagree with both characterizations. By employing the proportionate reduction practice, the trial court only *clarified* the extent of Jacobson's enforceable obligation under the original 1962 order. The trial court's recognition that in 1962 it followed the proportionate reduction practice is not judicial notice limited under Minn.R.Evid. 201 since it does not involve an adjudicative fact.[1] In effect, then, the majority's opinion modifies Jacobson's obligation as originally contemplated by the parties in their divorce settlement, and this

without any determination of Jacobson's ability to pay.

The second basis for the trial court's decision is equitable principles.[2] The court held that Faribault County acquiesced in the Nevada court orders. The Nevada orders also applied a proportionate reduction rule.[3] Faribault County was notified of the orders, but took no action to contest or to clarify the effect of the orders. Moreover, Faribault County knew at all times the whereabouts of Jacobson and yet did not commence any proceedings to collect the alleged arrearages until 1979, or thirteen years after Faribault County alleged Jacobson was in arrears. Although the record is not entirely clear, it establishes only that Faribault County indicated its intent in December 1977 to seek arrearages beyond those due under the Nevada orders. That was about six months before Jacobson's support obligation to the youngest of the four children terminated but over three years after Faribault County agreed to accept payments in accordance with the Nevada orders. Viewing the evidence in favor of the trial court's decision, I would affirm and hold that fundamental fairness only permits Faribault County to seek arrearages calculated by proportionately reducing Jacobson's support obligation.

---

1. The trial judge in this case is the senior district court judge in Minnesota. His long and distinguished tenure in the fifth judicial district began in 1955. I for one will not challenge his familiarity with the practice in that district in 1962.

2. The majority opinion relies upon *Ryan v. Ryan,* 300 Minn. at 251, n. 2, 219 N.W.2d at 916, n. 2 which stated that equitable defenses are not available in an action for unpaid alimony. The Ryan court, however, evidently did not apply the rule since it relied on cases referring to the doctrine of "unclean hands." I believe the court improperly extends that questionable rule to apply to this action. This case is not an action

by one former spouse against another where acrimony and equity are difficult to distinguish. It is an action by a county government agency under a statute designed to create a uniform and fair method of enforcement of child support obligations.

3. A recent decision reflects the common judicial acceptance of this practice. *McClelland v. McClelland,* 359 N.W.2d 7 (Minn.1984) (reversing a fixed figure child support award until the youngest child turns 18 and remanding for the trial court to "establish a schedule for its automatic reduction as each of the children becomes emancipated." Id. at 11).