Joanne WOOD, Parent and Guardian, on Behalf of John DOE and Jim Doe, minor unnamed juveniles, Appellants,

v.

Dale Lawrence ASTLEFORD, Astleford Equipment Company, Inc., et al., Lola Mae Astleford, Respondents.

No. C5–87–955.

Court of Appeals of Minnesota.

Sept. 29, 1987.

Review Denied Nov. 24, 1987.

William D. Harper, Jeanne E. Kass, Harper & Anderson, Chartered, Cottage Grove, for appellants.

Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Minneapolis, Brett W. Olander, Jardine, Logan & O'Brien, James A. Reding, Reding & Votel, St. Paul, for respondents.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

This appeal is from an entry of summary judgment in favor of respondents. B.S., T.S. and their mother brought an action against Dale Astleford's wife, Lola Mae Astleford; his employer, Astleford Equipment Company, Inc.; and Sandra Dawson, president and director of Astleford Equipment from November 1979 through January 16, 1982. Appellants alleged negligence in respondents' failure to warn appellants of Dale Astleford's pedophilia. The trial court granted respondents' motions for summary judgment. Appellants then moved for a reconsideration of the court's order granting summary judgment and for judicial notice of the contents of the Minnesota Bureau of Criminal Apprehension (BCA) file on Dale Astleford. The court denied these motions. We affirm.

## FACTS

On January 16, 1982, the Bloomington Police, St. Paul Postal Inspector and Minnesota BCA executed simultaneous search warrants at the Dale Astleford residence and the Astleford Equipment Company. In a darkroom in the basement of the Astle-

ford residence and in Dale Astleford's bedroom, they found various items of photographic equipment, pornographic books and magazines, and photographs of juvenile males, including B.S. and T.S., the minor appellants in this case.

Dale Astleford began taking sexually explicit photographs of B.S. beginning in 1979 and T.S. beginning in 1980. He also had sexual contact with them. This contact took place almost exclusively at the Astleford residence, although some contact took place at the Astleford Equipment Company in an outlying building during non-business hours. The only people with access to this building were Dale Astleford, his son, his two foster sons, his brother and his father. Criminal charges were brought against Dale Astleford, to which he pled guilty.

The Astlefords began having marital problems in 1975. In November 1978 they separated. Lola Astleford did not live in the Astleford residence from November 1978 to October 1981, the primary period during which T.S. and B.S. had sexual contact with Dale Astleford. During that time, she occasionally went to the residence.

### ISSUES

1. Did the trial court properly grant respondents' summary judgment motions?

2. Is there a genuine issue of material fact with respect to negligent hiring on the part of Astleford Equipment and Sandra Dawson so as to preclude summary judgment in their favor?

3. Did the trial court abuse its discretion in failing to take judicial notice of the contents of Dale Astleford's file with the Minnesota BCA?

### DISCUSSION

#### I

Appellants essentially argue that Astleford Equipment and Sandra Dawson, as Dale Astleford's employer, breached a duty to warn of Dale Astleford's dangerous proclivities. They further contend that Lola Astleford, as his wife or as a joint owner of the Astleford residence, also breached a

duty to warn of his proclivities. The trial court granted respondents' motions for summary judgment. B.S., T.S. and their mother appealed, arguing that genuine issues of material fact preclude summary judgment.

■ On appeal from a summary judgment, the reviewing court must determine (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its interpretation of the law. *Huver v. Opatz*, 392 N.W.2d 237, 239 (Minn.1986). The trial court should deny the motion if reasonable persons might draw different conclusions from the evidence presented. *Illinois Farmers Insurance Co. v. Tapemark Co.*, 273 N.W.2d 630, 633 (Minn.1978).

■ Generally, a person has no duty to control the conduct of a third person to prevent that person from causing injury to another. *Lundgren v. Fultz*, 354 N.W.2d 25, 27 (Minn.1984). The duty may arise, however, when (1) the actor stands in some "special relationship" to either (a) the person whose conduct needs to be controlled or (b) to the foreseeable victim of that conduct, and (2) the harm is foreseeable. *See, e.g., Lundgren*, 354 N.W.2d at 27; *see also Cairl v. State*, 323 N.W.2d 20, 25 n. 7 (Minn.1982).

■ The existence of a legal duty to warn is generally an issue for the court to determine as a matter of law. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985). If the court finds the requisite special relationship, the only remaining question is foreseeability. *See Lundgren*, 354 N.W.2d at 27. In close cases, foreseeability may be for jury resolution. *Larson*, 373 N.W.2d at 289.

*Astleford Equipment & Sandra Dawson*

■ For purposes of their summary judgment motions, Astleford Equipment and Sandra Dawson conceded that the master-servant relationship between themselves and Dale Astleford satisfied the special relationship requirement. Thus, the only disputed issue was whether the harm

to T.S. and B.S. was foreseeable. The trial court concluded, as a matter of law, that the harm was not foreseeable.

Addressing the foreseeability issue in *Cairl*, the supreme court stated, "if a duty to warn exists, it does so only when specific threats are made against specific victims." *Cairl*, 323 N.W.2d at 26. "The duty to warn is not owed to statistically probable victims, but rather to specifically targeted victims." *Id.* at 26 n. 9. In *Cairl* the plaintiffs brought an action against several governmental agencies alleging breach of a duty to warn them of the dangerous proclivities of a mentally retarded, pyromaniac youth released from a state institution on home leave. *Id.* at 21. While on leave, the youth set his mother's apartment building on fire, killing one tenant and damaging the rest of the building. *Id.* at 22. The court found the governmental agency employees that approved the leave and who were charged with the care and treatment of the youth, had the requisite special relationship to the youth. *Id.* at 25 n. 7. Nevertheless, because he had not threatened a specific plaintiff, no duty to warn arose. *Id.* at 26.

With respect to the foreseeability issue, appellants have produced insufficient evidence that Astleford Equipment or Sandra Dawson knew or should have known of Dale Astleford's propensitites and the need to warn. They have also produced no evidence that specific threats were made against specific victims (i.e., T.S. and B.S.) as required by *Cairl*. By affidavit, both Astleford Equipment, via its officers, and Sandra Dawson specifically denied actual or constructive knowledge of Dale Astleford's conduct with T.S. and B.S. Further, the statements of Dale Astleford, B.S. and T.S. indicate they purposely kept their activity secret.

Appellants attempt to impute to Astleford Equipment and Sandra Dawson certain information allegedly possessed by former employees who participated in Dale Astleford's pornographic photography sessions at Astleford Equipment. The record does not indicate that any of the employee participants ever informed any corporate officer of Dale Astleford's activities or that T.S. and B.S. were his specific targets. One participant stated that he "thought that most of the people that worked there knew that something was going on." This belief is simply insufficient to establish corporate knowledge or to impose a duty to warn T.S. and B.S., especially in light of his admission that he never discussed what was going on with anyone working at Astleford Equipment.

According to Haskell Scott Dawson, Astleford's nephew, he told his grandfather, Mel (M.G.) Astleford, one month before Dale Astleford's arrest that Dale was "playing with little kids." M.G. Astleford, vice president and director of Astleford Equipment from November 1977 to November 1979, has denied such knowledge by affidavit. Appellants claim this communication gave a corporate officer notice of Dale Astleford's proclivities.

Assuming Haskell Scott Dawson told his grandfather this, the trial court concluded that the harm to T.S. and B.S. was nevertheless unforeseeable. Arguably, "playing with little kids" has an innuendo of sexual impropriety. It does not, however, identify specific aberrant behavior or indicate that T.S. and B.S., or for that matter juvenile males in general, were particular victims. Additionally, appellants have directed us to no evidence that M.G. Astleford was a corporate officer at the time he allegedly received this information.

Appellants contend that under *Lundgren v. Fultz*, 354 N.W.2d 25 (Minn.1984), specific victims need not be targeted to find a duty to warn and that *Cairl* is inapplicable. In *Lundgren* the supreme court reversed a summary judgment in favor of the defendant even though no specific threats were leveled against specific individuals. In that case the defendant, a psychiatrist, asked the police to return some guns to his patient, despite the psychiatrist's knowledge that his patient had previously brandished guns in public. The patient killed a woman whom he had never previously threatened. The court reversed for a determination of whether the psychiatrist negligently recommended the return of the guns. *Id.* at 26.

The supreme court distinguished *Lundgren* from *Cairl*, determining that *Lundgren* was unlike *Cairl* because a handgun was involved and the duty of a professional was at issue. *See id.* at 29.

■ *Lundgren* is inapposite. We agree with the trial court that *Cairl* is controlling on these facts. When an employer has no notice of an employee's specific aberrant behavior and the specific targets of his proclivities, the risk is so speculative that no duty to warn arises. *Cf. Larson*, 373 N.W.2d at 289 (when unidentified person had threatened to "get" a police officer's house, police officer had no duty to warn brother of possible danger of arson when brother was house-sitting).

### Lola Astleford

■ In her summary judgment motion and on appeal, Lola Astleford disputes the existence of (1) any special relationship with her husband that would impose a duty on her to control his conduct, or (2) any special relationship with B.S. and T.S., as a co-owner of the Astleford residence, which would impose a duty to warn them of her husband's criminal proclivities. The trial court found the existence of the special relationship to be immaterial because it determined that Lola Astleford could not have foreseen her husband's abuse of T.S. and B.S. On appeal claimants pursue the special relationship issue and contend the foreseeability issue should be determined by a jury. Because we agree with the trial court, we decline to reach the special relationship issue.

There is scant evidence from the record, briefs or oral arguments that Lola Astleford knew or should have known of her husband's pedophilia. Although Lola Astleford's mother told her before Lola moved out that boys stayed overnight as Dale's guests when she was out of town, this information could not have alerted Lola to Dale's activities. It was common for boys to be present in the Astleford residence due to Dale Astleford's association with various youth groups. Dale Astleford was involved with his church as a Sunday school teacher for 30 years, and with the Boy Scouts. He and his wife were both involved in youth counseling.

Similarly, Lola Astleford's questioning of Dale does not evidence knowledge of her husband's sexual improprieties with B.S. and T.S. Each time she questioned him, he denied he was a homosexual or that he was being blackmailed. Further, the boys whose frequent presence in the home concerned her did not include T.S. or B.S., whom she did not meet until sometime after she moved out of the home.

The risk was also not foreseeable, because T.S. and B.S. were never specifically identified as targets of abuse. Neither B.S., T.S. nor Dale ever told Lola Astleford about the contact or photographs with B.S. or T.S. T.S. stated that Dale Astleford never said anything in his wife's presence that would alert her to what was happening. No one was present in the same room with Dale Astleford and the particular appellant during contact.

Not until early December 1981 did Joel, the Astlefords' son, tell his mother that his father had in the past been involved with child pornographic photography. In identifying which children had been involved, however, Joel did not mention T.S. and B.S. Confronted by Lola Astleford with this information, Dale admitted he had been involved with four children. He specifically denied involvement with either T.S. or B.S. upon his wife's questioning.

The facts may have aroused some prior suspicion of aberrant behavior, but not of pedophilia or that B.S. and T.S. were the particular targets of specific aberrant behavior. We agree with the trial court that the risk of harm to B.S. and T.S. was unforeseeable as a matter of law. Lola Astleford thus had no duty to warn, and summary judgment was proper.

### II

Appellants claim there is a genuine issue of material fact with respect to negligent hiring on the part of Astleford Equipment and Sandra Dawson. These respondents previously moved for summary judgment on this issue. In granting respondents'

motions, the trial court did not specifically address the negligent hiring issue. In appellants' motion for reconsideration of the trial court's order for summary judgment, appellants again raised the negligent hiring issue. At that time, they produced no facts of any kind that would suggest any negligence in hiring. They did not present any evidence on that issue in their appellate brief or raise the issue in oral argument. Failing to direct this court to any evidence related to that claim after three years of discovery, appellants appear unequivocally to have abandoned the negligent hiring issue, and respondents are entitled to judgment thereon as a matter of law.

## III

 T.S., B.S. and their mother appeal the trial court's refusal to take judicial notice of the contents of Dale Astleford's file with the Minnesota BCA. Appellants asked the court to take judicial notice of the "'totality of the circumstances' in determining whether the victimization of appellants was reasonably foreseeable." The court had previously sealed the file.

Minn.R.Evid. 201(b) provides:

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

It is difficult to see that *the contents* of the file are generally known within this territorial jurisdiction or are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. "Minnesota has traditionally limited judicial notice of adjudicative facts to situations incapable of serious dispute." *See* Minn.R.Evid. 201 Committee Comment 1977. A criminal investigation file typically contains hearsay, rumor, conclusions and documents or photographs that may have an insufficient foundation to be admitted in evidence.

The trial court has discretion to take judicial notice. *See Antell v. Pearl Assurance Co., Ltd.*, 252 Minn. 118, 130, 89 N.W.2d 726, 735 (1958). To take judicial notice of the BCA file, however, would be an undue broadening of the doctrine and would probably be an abuse of discretion.[1] Judicial notice is to be taken with caution and every reasonable doubt as to the propriety of its exercise in a given case should be resolved against it. *State ex re. Remick v. Clousing*, 205 Minn. 296, 285 N.W. 711, 714 (1939).

## DECISION

The trial court properly granted respondents' summary judgment motions on the ground that the harm to appellants was not foreseeable. Appellants have abandoned the negligent hiring issue. The trial court did not abuse its discretion in refusing to take judicial notice of a criminal investigation file.

Affirmed.

---

1. We also note the motion was not timely because the issue was raised in the motion for

reconsideration and not in opposition to respondents' motions for summary judgment.